UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Criminal Action No. 5: 17-069-DCR |
| V. | |
| ANSAR MCIVER, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Ansar McIver filed a motion to suppress all evidence seized pursuant to a June 12, 2017 search of his residence. [Record No. 71] The motion was referred to United States Magistrate Judge Robert E. Wier for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Wier issued a Recommended Disposition on November 1, 2017, recommending that this Court deny the defendant's motion. [Record No. 94] Thereafter, McIver filed objections to the Recommended Disposition. [Record No. 102] Following careful review of the matter, the Court concludes that the motion to suppress should be denied.

I.

Magistrate Judge Wier issued a search warrant for 1337 Sequoia Drive in Lexington, Kentucky, on May 12, 2017, based upon the affidavit of FBI Special Agent Michael Van Aelstyn. [*See* Record No. 71-1.] The Recommended Disposition recites the contents of the affidavit in painstaking detail, so the Court will not repeat all of the particulars here. In summary, law enforcement officers conducted surveillance of multiple locations suspected of

being involved in the distribution of controlled substances over a period of several weeks. Special Agent Van Aelstyn's affidavit includes information provided by a confidential informant ("CI"),[1] including the informant's representations that narcotics were being transported from a residence at 425 Shropshire Avenue to McIver's residence at 1337 Sequoia Drive.

McIver argues that there was not probable cause for the warrant because Van Aelstyn failed to establish that the CI was reliable and, accordingly, there was an insufficient basis to believe that evidence of a crime would be found at McIver's residence. His arguments are wholly without merit.

## II.

The Fourth Amendment prohibits the issuance of a search warrant unless it has been issued "upon probable cause, supported by oath or affirmation." U.S. CONST. amend. IV. To demonstrate probable cause sufficient to justify a search warrant, the proponent must submit an affidavit that "indicate[s] a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Elbe*, 774 F.3d 885, 888 (6th Cir. 2014) (citations and internal quotation marks omitted). The belief that items sought will be found at the location to be searched must be "supported by less than *prima facie* proof but more than mere suspicion." *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003).

A magistrate judge "may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the

---

[1] The affidavit in support of the search warrant refers to the confidential informant as "CHS1."

nature of the evidence and the type of offense." *United States v. Caicedo,* 85 F.3d 1184, 1192 (6th Cir. 1996) (internal citations and quotation marks omitted). On review, the Court simply must determine whether the issuing magistrate had a "substantial basis" to conclude that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 236-37 (1983). A magistrate judge's probable cause determination is entitled to great deference and will be overturned only if the magistrate judge arbitrarily exercised his or her discretion. *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013). To the extent that McIver has raised objections the Magistrate Judge's Recommended Disposition, the Court will conduct a *de novo* review. *See* 28 U.S.C. § 636(b)(1)(C).

### III.

McIver complains in his motion to suppress that the Magistrate Judge lacked a substantial basis for concluding that officers had probable cause to search his residence. [Record No. 71] Specifically, he contends that the warrant depends on the word of an informant whose reliability is not substantiated and whose factual statements are not attributed to firsthand knowledge or corroborated by investigators. However, the CI's reliability is substantiated, in part, based on Van Aelstyn's knowledge of the person's identity. Importantly, as explained below, significant portions of the CI's factual statements are attributed to first-hand knowledge and are corroborated by independent police investigation.

The Court applies a totality-of-the-circumstances approach to determine whether probable cause exists. *Gates*, 462 U.S. at 230-31; *United States v. Allen*, 211 F.3d 970 (6th Cir.), *cert. denied*, 531 U.S. 907 (2000). With respect to statements by a confidential informant, affidavits must provide facts supporting an independent judicial determination that the informant is reliable, but the facts need not take any particular form. *United States v.*

*McCracken*, 401 F.3d 693, 697 (6th Cir. 2005). The determination of reliability can be satisfied in a variety of ways. The affidavit could state that the police corroborated significant parts of the CI's story or that the CI has provided reliable information in the past. *Id.* (citing *Allen*, 211 F.3d at 975-76); *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001). There could be other indicia of the CI's reliability such as a detailed description of the CI's first-hand observations or the CI's willingness to reveal his or her name. *Id.* Whether probable cause exists is a "commonsense, practical" inquiry. *Gates*, 462 U.S. at 230.

As McIver points out, and the Magistrate Judge acknowledged, Special Agent Van Aelstyn did not provide significant background information regarding the CI. And while the affidavit did not disclose the CI's identity, Van Aelstyn attested that *he knew* the identity of the individual and he believed the individual to be reliable. [Record No. 71-1, p. 4] This fact lends credibility to the CI's statements because, if false, he or she would be subject to prosecution for making a false report. *See United States v. May*, 399 F.3d 817, 824-25 (6th Cir. 2005) (citing *Gates*, 462 U.S. at 241). The statements of a CI whose identity is known to police and would be subject to criminal liability are entitled to "far greater weight than those of an anonymous source." *Id.* 824-25.

But even if there is some doubt regarding an informant's motives, his "explicit and detailed description of alleged wrongdoing, along with a statement that the event was described first-hand, entitles his tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234. *But see United States v. Neal*, 577 F. App'x 434, 443 (6th Cir. 2014) (corroboration necessary where affidavit does not contain sufficient indicia of reliability). The CI provided several key pieces of information that were detailed and corroborated by independent police investigation.

> For instance, the CI advised that inside the garage at 425 Shropshire on May 9, 2017,
>
>> the Hispanic male removed approximately '16 squares' in total wrapped packages from the real wheel wells of the white Honda Accord. The squares were likely controlled substances. Eight packages were located on each side of the vehicle. The squares appeared to be tightly wrapped in black plastic then sealed on each side inside clear plastic baggies. The squares were then loaded into trash bags.

[Record No. 71-1, p. 6] Although the affidavit does not state explicitly that the CI observed these events first-hand, it is apparent, based on the level of detail, that he or she did so. *See United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996) (suggesting search warrant affidavits should be read in a "practical, common-sense" manner). These statements are corroborated by agents' contemporaneous observations of a Hispanic male and a Hispanic female exiting 425 Shropshire and loading two trash bags into a gray Chevrolet Equinox. Officers observed the pair as the female dropped off the male at a Motel 6 and proceeded to the residence of McIver, a known "high-level drug trafficker." [Record No. 71-1, pp. 4, 6] The Hispanic female was observed carrying the bags into McIver's residence and leaving without the bags. *Id.* According to the CI, McIver gave the Hispanic female approximately $15,000.00 to pay to the Hispanic male for successful delivery of the "squares" to his residence.

The CI "made contact" with McIver (whom the CI has known for a significant period of time) at his residence on June 8, 2017. [Record No. 71-1, p. 9] During that time, the CI overheard McIver talking to a source of supply for controlled substances. *Id.* According to the CI, McIver ordered a large quantity of marijuana and cocaine to be delivered to him. *Id.* McIver stated on more than one occasion that "he had it," purportedly referring to payment for the previous load of controlled substances. *Id.* Agents were conducting surveillance on June

12, 2017, when they saw the gray Chevrolet Equinox (which was observed frequently throughout the investigation) pull up to McIver's residence and back into the garage. Based on the investigation, as well as Van Aelstyn's experience and expertise, he believed the action was designed to conceal a drug proceeds transfer between the driver of the vehicle and McIver. *Id.* at pp. 9-10.

The defendant urges the Court to envision a scenario in which the CI was not present at McIver's residence on June 8, 2017, but, instead, "made contact" through a telephone call or the like. This reading of the affidavit is unnatural, as it seems unlikely that McIver would order a large quantity of controlled substances and repeatedly assure the source of supply regarding payment while on the phone with another person. As in this case, affidavits are typically drafted by non-lawyers in the "midst and haste of a criminal investigation." *United States v. Howard*, 632 F. App'x 795, 806-07 (6th Cir. 2015) (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). Accordingly, a reviewing court will not scrutinize the attesting officer's every word. And regardless of how the CI "made contact" with McIver, the CI's assertions were corroborated by the officers' observations of the gray Equinox arriving at McIver's residence on June 12, 2017.

The CI's statements were corroborated by other aspects of the officers' investigation. The affidavit begins by describing suspected drug trafficking activity at 425 Shropshire. This includes the suspicious backing of a trailer into the garage on April 26, 2017. [Record No. 71-1, p. 3] A car had to be moved so that the trailer could be parked inside the garage. Despite the participants' efforts, the garage door would not close completely and agents were able to see individuals moving around inside. Numerous people were observed coming and going

from the premises.  Based on Van Aelstyn's experience, training, and knowledge, he believed that the trailer contained controlled substances.  *Id.* at pp. 3-4.

The same day, agents observed the Hispanic female leave 425 Shropshire in the gray Chevrolet Equinox and drive to Chauvin Drive, where she met the defendant.  The defendant gave her a white plastic bag and the two departed in separate directions.  The Hispanic female returned to 425 Shropshire, where she took the plastic bag into the residence.  *Id.* at p. 4.  The defendant arrived at 425 Shropshire shortly thereafter and went inside.  *Id.*  And as previously described, the Hispanic female departed 425 Shropshire on May 9, 2017, and drove to McIver's residence where she dropped off the two trash bags transported from the suspected drug trafficking location.  *Id.* at p. 5.  Van Aelstyn also observed the gray Equinox backing into McIver's garage on June 12, 2017.  *Id.* at p. 9.  Based on his experience, training, and knowledge, Van Aelstyn believed the vehicle was destined to pick up drug proceeds that were stashed at 1337 Sequoia Drive.  *Id.* at p. 10.

Finally, Van Aelstyn's allegation that the defendant is a drug dealer, without more, is insufficient to tie alleged criminal activity to the defendant's residence.  *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005).  However, it is one factor to consider in the totality of the circumstances.  *See United States v. Bethal*, 245 F. App'x 460, 468-69 (6th Cir. 2007) (observing that suspects identified as drug dealers routinely keep drugs at home).  Considering all of the circumstances, including the CI's statements which were corroborated by independent police investigation, the issuing magistrate had a substantial basis to conclude that probable cause existed.

The Court also agrees with the Magistrate Judge's conclusion that, even if probable cause had not been established, the *Leon* good faith exception applies.  *See United States v.*

*Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court concluded that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* at 922.

Of course the affidavit could have included additional details regarding the CI's reliability or the CI's interactions with the defendant and others. However, the focus is on what the affidavit includes rather than what it does not include. *Allen*, 211 F.3d at 975. As explained in the Magistrate Judge's Recommended Disposition, Special Agent Van Aelstyn provided a lengthy and detailed affidavit which relied largely on independent police investigation which took place over a period of several weeks. Contrary to the defendant's assertion, it was not centered on the uncorroborated statements of an unreliable CI, such that a reasonable officer would have known that the warrant was invalid. *See United States v. Helton*, 314 F.3d 812, 824-25 (6th Cir. 2003) (citing *Leon*, 468, U.S. at 905). For the reasons previously explained, the affidavit contained a "minimally sufficient nexus between the illegal activity and the place to be searched" to support officers' good-faith belief in the warrant's validity. *See United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004).

### IV.

Based on the foregoing, it is hereby

**ORDERED** as follows:

1. The Recommended Disposition of Magistrate Judge Robert E. Wier [Record No. 94] is **ADOPTED** and **INCORPORATED** by reference.

2. Defendant Ansar McIver's motion to suppress [Record No. 71] is **DENIED**.

This 16th day of November, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge