UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 5: 17-069-DCR |
| V. | ) ) | |
| ANSAR MCIVER, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Ansar McIver filed a motion for compassionate release on May 7, 2020, which the Court denied. [Record Nos. 295, 301] The United States Court of Appeals for the Sixth Circuit vacated the Court's decision on January 20, 2021, based on its holding in *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020), which was issued after this Court's decision denying relief. [Record No. 313] Following remand, the parties filed renewed briefs regarding McIver's motion for compassionate release.[1] [Record No. 315]

McIver's motion will be denied because he has not demonstrated compelling and extraordinary reasons for release and the factors under 18 U.S.C. § 3553(a) do not weigh in favor of release.

# I.

McIver pleaded guilty to conspiring to distribute five kilograms or more of cocaine, 400 kilograms of fentanyl, and one kilogram or more of heroin in violation of 21 U.S.C. §

---

[1] McIver's initial motion for compassionate release was drafted by Attorney F. Dennis Alerding. However, McIver is proceeding *pro se* following remand by the Sixth Circuit.

841(a)(1) (Count 1), and conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 2). He was sentenced on November 21, 2018, to 290 months' imprisonment on Count 1 and 240 months' imprisonment on Count 2, to run concurrently. [Record No. 263] McIver appealed his sentence but the Sixth Circuit dismissed the appeal based on the waiver contained in the parties' plea agreement. [Record No. 294]

**II.**

Requests for compassionate release are evaluated under 18 U.S.C. § 3582(c)(1)(A). It provides:

> the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Consistent with this statutory provision, district courts generally apply a three-step test when deciding motions for compassionate release. *See Jones*, 980 F.3d at 1107-08. First, the court must determine whether extraordinary and compelling reasons warranting a sentence reduction exist. *Id*. Second, the court must consider any *applicable* policy statements found in the United States Sentencing Guidelines. *Id.* at 1108. Third, the court must determine whether relief is warranted under the factors stated in 18 U.S.C. § 3553(a). *Id.*

There are no applicable guidelines policy statements when a prisoner files a motion for compassionate relief on his own behalf. *Id.* at 1108-09. Accordingly, when dealing with motions filed by prisoners, the Court skips step two of the three-step analysis. *Id.* at 1111.

Additionally, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

"Section 3582(c)(1)(A) does not define 'extraordinary and compelling reasons.'" *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). Following the Court's initial denial of McIver's motion, the Sixth Circuit clarified that, when an imprisoned person files a motion for compassionate release, the district court has "full discretion . . . to determine whether an extraordinary and compelling reason justifies compassionate release." *Jones*, 908 F.3d at 1109.

While the policy statement found in U.S.S.G. § 1B.13 of the Sentencing Guidelines is not binding, it provides a helpful starting point for deciding whether extraordinary and compelling reasons exist.

As relevant here, the application notes to § 1B1.13 provide:

(A) Medical Condition of the Defendant—
    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). . . . Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
    (ii) The defendant is—
        (I) suffering from a serious physical or medical condition,
        (II) suffering from a serious functional or cognitive impairment, or
        (III) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1. Medical conditions meeting this definition are "so serious that [they] cannot be adequately addressed in BOP custody." *United States v. Abney*, 2020 WL 7497380, at *2 (E.D. Ky. Dec. 21, 2020).

**III.**

McIver has filed memoranda in support of his previously-filed motion for compassionate release. He contends that his "advanced age and diagnosed medical conditions make him especially vulnerable to the deadly risks of COVID-19." [Record Nos. 316, 319][2] To begin, the defendant is 48 years old. This is not considered "advanced age" under section § 1B1.13 of the Sentencing Guidelines or any other definition of which the Court is aware. *See* cmt. n. 1.(B) ("Age of the Defendant—"The defendant is at least 65 years old . . . ."). To the extent the defendant claims his underlying medical conditions render him particularly vulnerable to the effects of COVID-19, the government has introduced documentation indicating that McIver received the first dose of the Moderna COVID-19 vaccine on March 2, 2021.[3] [Record No. 326-2]

Oddly, McIver ignores the evidence of his vaccination and continues to make the same arguments about being at risk of COVID-19 based on his underlying health conditions. According to evidence identified by the CDC, the Moderna vaccine was 94.1 percent effective at preventing COVID-19 in people who had received both doses and who had not previously

---

[2] Memoranda in support of McIver's motion are filed at Record Nos. 316 and 319, but they appear substantially similar.

[3] The record does not contain evidence of McIver's second dose. However, the second dose of this vaccine ordinarily is administered 28 days after the first. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html (updated Apr. 5, 2021).

been infected.[4]  Put simply, the defendant has not demonstrated that COVID-19 is an extraordinary and compelling reason for reducing his sentence, particularly when he has been vaccinated against the virus.

Likewise, McIver has not demonstrated that his existing health conditions constitute compelling and extraordinary reasons for release.  He purports to suffer from hypertension, cardiomyopathy, atrial fibrillation, hyperlipidemia, and sleep apnea.  [Record No. 319, p. 20]  McIver also contends that he "needs medical attention as he suffers from a degenerate heart failure and has no pacemaker in his chest in order to live, and if he does not receive[] the needed replacements or a donor heart, he will eventually die from his ailment."  [Record No. 319, p. 31]  Additionally, he asserts, he "needs the use of a wheelchair in most instances in order to be mobile, and given all the mentioned conditions that pre-exist."  *Id.*

The United States has provided McIver's medical records from the past several years, which indicate that his health conditions are being managed sufficiently.  The records indicate that he receives regular medical care, takes numerous medications, and is referred for outside treatment when necessary.  The medical records also reveal that McIver does have cardiomyopathy, which is treated with coumadin, among other medications. However, McIver has been non-compliant with his anticoagulant medication, regularly testing within the subtherapeutic range.  McIver had an "AICD" placed in May 2017 and is regularly followed by a cardiologist.  He was seen by Roberto Negron, M.D., in January 2021, who noted that

---

[4]     CENTERS FOR DISEASE CONTROL, *Moderna COVID-19 Vaccine Overview and Safety,* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html (updated Apr. 5, 2021).

McIver was "on optimal medical therapy." He also observed that the "device life [was] about one year" and planned to "interrogate device" in six months. [Record No. 326-1, p. 219]

McIver's purported reliance on a wheelchair also does not constitute an extraordinary and compelling reason for release. While medical evidence indicates that McIver has experienced leg wounds due to venous insufficiency, he has not pointed to evidence indicating that he relies extensively on a wheelchair for mobility. Further, he has not explained why this limits his ability to provide self-care within his institution of confinement.

McIver also fails to demonstrate that the factors under 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction. As this Court noted previously, the defendant has a long history of committing controlled substance offenses and he qualified as a career offender under U.S.S.G. § 4B1.1 at sentencing. McIver conspired with others in the instant offense to introduce large quantities of dangerous substances (including fentanyl) into the Eastern District of Kentucky.

McIver contends that he is not a violent offender and is no longer a danger to the community because of his health problems. However, the defendant's health problems are longstanding and were fully considered at the time of his sentencing hearing. Further, the defendant participated in very serious criminal activity while suffering from the same health problems, and there is no indication that these issues would stop him from reoffending if he were released.

McIver's advisory guidelines range for Count 1 was 262 to 327 months' imprisonment based on his total offense level of 34 and criminal history category of VI. During the sentencing hearing, the Court advised that, ordinarily the starting point for sentencing in the defendant's case would be 320 months' imprisonment. However, based on the particular

circumstances in this case, including information provided during a bench conference, the appropriate sentence was 290 months.[5]  [Record No. 289, pp. 14-17]  The undersigned noted that a lengthy sentence was needed to deter the defendant and others that might be inclined to engage in similar conduct.  Further, previous, less severe sentences have been insufficient to deter McIver's criminal conduct.

Finally, McIver's projected release date is January 14, 2038.[6]  Releasing him now would unduly minimize the seriousness of his offense.  Having again reviewed the entire record of this proceeding, the Court remains convinced that the sentenced originally imposed remains minimally sufficient but certainly no greater than necessary to fulfill the objectives of 18 U.S.C. § 3553(a).

Accordingly, it is hereby

**ORDERED** that the defendant's motion for compassionate release [Record No. 295] is **DENIED**.

Dated: May 5, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

---

[5]  McIver was sentenced to a concurrent term of 240 months' imprisonment on Count 2.

[6]  BUREAU OF PRISONS, *Find an inmate,* https://www.bop.gov/inmateloc/ (last accessed May 4, 2021).