UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | Criminal Action No. 5: 17-069-DCR |
| ) | and |
| V.  ) | Civil Action No. 5: 21-116-DCR |
| ) | |
| ANSAR MCIVER, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Movant. ) | |

*** *** *** ***

Defendant Ansar McIver pleaded guilty to conspiring to distribute five kilograms or more of cocaine, 400 grams of fentanyl, and one kilogram or more of heroin. He also pleaded guilty to conspiring to launder money. McIver was sentenced to a total of 290 months' imprisonment on November 21, 2018. He has now filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, based on claims of ineffective assistance of counsel. The motion will be denied because McIver has not demonstrated that his attorneys' assistance fell below an objective standard of reasonableness or that he was prejudiced by counsels' performance.

**I.**

The United States filed a criminal complaint on June 13, 2017, charging McIver with conspiring to distribute Schedule I and Schedule II controlled substances. During his initial appearance, McIver completed a financial affidavit indicating that he could not afford to pay for counsel. The Court appointed attorney Patrick Nash to represent McIver under the Criminal Justice Act, 18 U.S.C. § 3006A.

Less than two weeks later, Scott Cox, Michael Mazzoli, and Joseph Eggert entered their appearances as retained counsel for McIver. Nash was permitted to withdraw. In December 2017, shortly after the grand jury returned a third superseding indictment charging McIver with a drug trafficking conspiracy (Count 1); a money laundering conspiracy (Count 2); possession with intent to distribute heroin (Count 3); possession with intent to distribute fentanyl (Count 5); and possession with intent to distribute cocaine (Count 6), attorney Crysta Pennington also entered an appearance on McIver's behalf.

McIver filed a motion for re-arraignment. On January 24, 2018, he pleaded guilty to Counts 1 and 2 of the third superseding indictment pursuant to a written plea agreement with the United States. [*See* Record Nos. 149, 150.] McIver admitted that, beginning on or about January 1, 2017, he and others agreed to obtain large quantities of cocaine, fentanyl, and heroin from the southwest portion of the United States. Shipments of the controlled substances were made by passenger vehicle with the substances concealed in various compartments within the vehicles.

During the investigation of McIver's drug trafficking activities, significant quantities of controlled substances were seized during a traffic stop and during a search of his residence. A significant amount of cash ($567,369) was found in McIver's residence, together with $19,000 in poker chips, and inert substances used to combine with fentanyl to increase the volume of the marketable product.

McIver was determined to be a career offender under § 4B1.1 of the United States Sentencing Guidelines based on his previous felony convictions of controlled substance offenses. And he was also subject to an enhanced statutory penalty under 21 U.S.C. §

841(b)(1)(A), based on a prior conviction for distributing cocaine. (Lexington Criminal Action No. 5: 07-CR-197-KSF).

## II.

Section 2255 permits a prisoner in custody under a federal sentence to move the court that imposed the sentence to vacate, correct, or set it aside on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. "A motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

A defendant in a criminal prosecution has a constitutional right to reasonably effective assistance of counsel. U.S. Const. amend. VI. Under the two-part test announced in *Strickland v. Washington*, a defendant challenging his conviction under § 2255 must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. 466 U.S. 668, 687 (1984). This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. The prejudice prong requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Id.* at 687.

### III.

McIver makes various claims that his attorneys provided ineffective representation throughout the proceedings, but does not attribute specific conduct to any particular attorney. As a result, the Court must address McIver's assertions generally, with respect to his attorneys collectively, as they are presented in his motion.

First, McIver appears to attack the validity of his guilty plea by arguing that his attorneys "rushed [him] into taking the plea offer, under the condition that he would get the medical help he needed." He contends that he "had no choice but to plead guilty and follow all of counsel's instructions" and was "coached on what to say and what to do from pretrial to sentencing proceedings." [Record No. 335, p. 24] McIver also suggests that his attorneys, and possibly the government, promised him that he could see his chosen cardiologist, Dr. Prince, if he agreed to plead guilty. *Id.* pp. 24-25.

A guilty plea is valid when the defendant knowingly, intelligently, and voluntarily waives the constitutional rights associated with a criminal trial and has "sufficient awareness of the relevant circumstances and likely consequences" of the plea. *United States v. Taylor*, 281 F. App'x 467, 469 (6th Cir. 2008) (internal citations omitted). As demonstrated by the transcript of McIver's re-arraignment hearing, the Court took significant steps throughout the proceeding to ensure that each objective was met.

The undersigned began the hearing by inquiring whether the defendant was ready to proceed. Attorney Cox responded:

> I don't know the answer to that . . . . We met earlier today and briefly went through the plea agreement, and he told me that he was willing to plea. . . . Thank you for excusing us from the 1:30 pretrial. *It gave me a half-hour to go through the plea agreements with him word by word*. . . He believes he's being

>    rushed into this, and I think it's in his interest to take this plea agreement and change his plea today.

(emphasis added). [Record No. 191] Cox and the defendant were then given an opportunity to consult in private before continuing with the re-arraignment hearing.

Cox advised the Court that that he had had no trouble communicating with McIver, that McIver was "very bright," and that he was competent to enter a guilty plea. *Id.* p. 13-14. McIver was placed under oath and advised he must answer the questions truthfully, under penalty of perjury. *Id.* p. 6. When asked whether he was satisfied with the representation his attorneys had provided, McIver reported that he was satisfied "to an extent."

The Court advised McIver that it would not accept his guilty plea if he had issues with his attorneys or if he believed they had given incorrect advice. *Id.* p. 15. When asked to explain what problems he had with his attorneys, McIver stated, "just somewhat on communication and bringing the plea at the 12th hour. But outside of that, they are extraordinary attorneys." *Id.*

The Court then engaged with the defendant in a thorough colloquy under Rule 11 of the Federal Rules of Criminal Procedure during which he asserted that his guilty plea was willingly and voluntarily made. McIver answered affirmatively when asked whether he had been fully informed of the consequences of entering a plea and that it was his voluntary and willing intention to enter a guilty plea. The Court asked McIver on two occasions whether he was being coerced, noting that when he previously entered a guilty plea in a separate case, he later tried to withdraw the guilty plea prior to the sentencing hearing. In response, McIver denied that he was being coerced in any way. [Record No. 191, pp. 5, 22]

The attorney for the United States reviewed all essential parts of McIver's plea agreement and McIver responded that the terms were accurate. He further reported that no promises had been made to him other than those was contained in the plea agreement. *Id.* p. 22. The Court then reviewed the potential penalties McIver faced and the rights he would be giving up if he proceeded to plead guilty rather than proceed to a jury trial. Ultimately, McIver advised the Court that he committed the offenses as described in factual basis of the plea agreement and that he was pleading guilty because he was guilty of the offenses charged in Counts 1 and 2 of the third superseding indictment. *Id.* p. 45.

Where, as here, the court scrupulously follows the required procedures for accepting a guilty plea, a defendant is bound by his statements in response to the court's inquiries. *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986). The Court specifically asked McIver whether anyone had made any promises to him that were not reflected in the plea agreement and he answered that they had not. His self-serving, after-the-fact assertion that counsel told him he could see Dr. Prince in exchange for pleading guilty does not constitute an extraordinary circumstance that calls the validity of McIver's guilty plea into question.

A criminal defendant is entitled to effective representation by counsel at all critical stages of the proceedings, including a change-of-plea hearing. *See Wright v. Van Patten*, 552 U.S. 120, 127 n.* (2008) (J. Stevens, concurring); *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006). To prevail on a claim of ineffective assistance based on advice given during the plea process, a defendant must establish that counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's errors, the defendant would have pleaded differently. *Griffin v. United States*, 330 F.3d 733, 736-37 (6th Cir. 2003).

Defendants alleging ineffective assistance of counsel bear a heavy burden of proof. *Whiting v. Burt*, 395 F.3d 602 (6th Cir. 2005). Here, McIver has failed to provide sufficient factual allegations to establish that counsel "rushed" him into pleading guilty. Instead, the record establishes the contrary occurred in this case. Attorney Cox advised the Court that he reviewed the plea agreement with McIver line-by-line. Further, the Court canceled a pretrial conference that was scheduled prior to the re-arraignment hearing and counsel had extra time to review the plea agreement with the defendant. As previously noted, McIver confirmed under oath that he understood the terms of the plea agreement and that he willingly and voluntarily chose to enter a guilty plea.

McIver makes a conclusory argument that, if not for counsels' cumulative errors, he would have "opted to proceed to trial or plead guilty without a plea agreement . . . and receive a significantly less harsh sentence." [Record No. 335, p. 25] But there is nothing in the record to suggest that this assertion is accurate. First, a movant cannot satisfy the prejudice prong of *Strickland* by merely asserting that he would have gone to trial had he received different advice. *See Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012). Instead, the test is an objective one and the defendant must demonstrate that "a decision to reject the plea bargain would have been rational under the circumstances." *Id.*

McIver has not offered any rational explanation for proceeding to trial rather than pleading guilty. Given that facts concerning the strength of the government's evidence and the substantial benefit McIver received by pleading guilty, it is unlikely that he would have

- 7 -

insisted on going to trial.[1]  His conclusory assertion that "there is a reasonable probability that [he] would have been found not guilty at trial" does not suffice.

Likewise, McIver's argument that he would have received a lesser sentence in the absence of a plea agreement is not well-taken.  McIver was charged with three additional offenses that were dismissed pursuant to his plea agreement.  Specifically, in Count 3 of the third superseding indictment, he was charged with possessing with the intent to distribute 1 kilogram of a mixture or substance containing heroin.  In Count 5 he was charged with possessing with the intent to distribute 400 grams or more of a mixture or substance containing fentanyl.  And in Count 6 he was charged with possessing with the intent to distribute a mixture or substance containing cocaine.

Had McIver proceeded to trial or pleaded guilty without the benefit of a plea agreement, he would have been subject to a mandatory minimum sentence of 20 years' imprisonment on Counts 3 and 5 and a statutory maximum sentence of 20 years on Count 6.  Even if the sentences were imposed to be served concurrently, it is difficult to conceive how an open plea to all of the Counts charged would have resulted in a lesser sentence than the one imposed.

Next, McIver challenges his attorneys' failure to file "any substantive pretrial motions . . . to determine the strength of [the government's] case-in-chief."  [Record No. 335, p. 19]  However, an ineffective-assistance claim must be supported with *specific* factual allegations.  *Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012).  McIver does not identify any particular type of pretrial motion his attorneys should have filed or explained why such motion would have been successful.  Simply put, counsel cannot be deemed ineffective for failing to

---

[1]   *See generally United States v. Salas*, LexCR-17-069, Transcript of Proceedings, Jury Trial [Record Nos. 211-213].

file a meritless motion. *Brown v. United States*, 2021 WL 1561481, at *2 (6th Cir. Mar. 31, 2021). Accordingly, McIver is not entitled to relief on this claim.

McIver next claims that his attorneys did not conduct an adequate pretrial investigation and that they "failed to research the case law, interview witnesses, or investigate the facts of [his] case." [Record No. 335, p. 21] Additionally, he faults counsel for failing to hire a private investigator. But again, McIver's claims are general and lack factual detail regarding what difference he believes the alleged conduct made in the outcome of his case. Instead, he contends counsel failed to "piece together evidence" or "put the government's case to any kind of adversarial test." But a motion under § 2255 must consist of something more than legal conclusions unsupported by factual allegations. *Short v. United States*, 504 F.2d 63 (6th Cir. 1974). A claim that merely states legal conclusions without substantiating factual allegations lacks merit. *See Loum v. Underwood*, 262 F.2d 866 (6th Cir. 1959).

Finally, McIver raises various challenges to counsels' performance with respect to sentencing, to wit: failure to discuss the presentence report with him, failure to file objections to the PSR, and counsels' general failure to argue for a lower sentence. Even though sentencing does not concern a defendant's guilt or innocence, ineffective assistance at sentencing can result in prejudice under *Strickland* since "any amount of [additional] jail time has Sixth Amendment significance." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) (alteration in original).

McIver reports that his attorneys did not explain his presentence report to him adequately prior to sentencing and only reviewed it with him on the day of the sentencing hearing. However, during the sentencing hearing, Cox reported that he mailed McIver a copy of the PSR on April 20, 2019, and asked him to review it. [Record No. 289, pp. 3-4] Cox then

met with McIver at the Fayette County Detention Center on May 8, where the two "reviewed it thoroughly." McIver did not indicate at any point that he needed additional time to review any of the materials in the PSR. McIver was sentenced on November 20, 2019, and had access to the PSR for approximately five months prior to sentencing.

McIver does not directly state how he was prejudiced by counsels' alleged failure to review the PSR with him, but he contends that counsel should have filed certain objections to the document. For example, he contends that counsel performed deficiently by failing to challenge his career offender classification. However, he does not identify the grounds on which counsel could have challenged his classification as a career offender under U.S.S.G. § 4B1.1. The PSR indicates that McIver had at least three prior felony convictions for controlled substance offenses, so it is unclear how counsel could have raised a non-frivolous argument that McIver was not a career offender under the guidelines.

McIver also contends that his attorneys should have objected to the quantity of drugs attributed to him and that he should not have been held responsible for the quantity of drugs attributed to the conspiracy as a whole. [Record No. 335, p. 28] However, the quantities of drugs attributed to McIver were tied to him directly. First, McIver was held responsible for one kilogram of heroin that a confidential witness observed being unloaded from a trailer axle at McIver's Shropshire Avenue residence. And McIver also was deemed responsible for six kilograms of cocaine that were seized during a traffic stop on May 18, 2017. While McIver was not present during the traffic stop, the cocaine was being delivered to him according to the officers' investigation into his drug trafficking activities. Finally, McIver was held responsible for 786.6 grams of fentanyl and 125.2 grams of cocaine that were seized during a search of his residence on June 12, 2017.

Pursuant to his plea agreement, McIver admitted facts indicating that he was responsible for these quantities of controlled substances. He has not identified any grounds upon which counsel should or could have reasonably objected to these quantities during sentencing.

Finally, McIver contends that counsel was ineffective for failing to argue for a lesser sentence based on his history of congestive heart failure and "pressing need of a heart surgery." *Id.* p. 29. But counsel *did* argue that the defendant's health conditions were a mitigating factor, which the Court took into consideration in determining the appropriate sentence. [Record No. 289, pp. 8, 15] This argument is without merit.

**IV.**

The Court must issue or deny a certificate of appealability when it enters a final order that is adverse to the movant in a § 2255 proceeding. Rule 11 of the Rules Governing § 2255 Proceedings for the United States District Courts; 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may be issued only when the defendant has "made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy this burden, the defendant must show that reasonable jurists could debate whether the petition should have been resolved in a different way or that the issues involved were adequate to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

McIver has not presented a colorable claim with respect to either prong under *Strickland*—reasonable jurists could not debate this. The fact that a defendant receives a lengthier sentence than he desired or expected does not render his attorneys' performance deficient. McIver has not identified any aspect of counsels' performance that fell below objective standards of reasonableness. Instead, he makes conclusory allegations that counsels'

performance was deficient, but this is insufficient to state a claim for ineffective assistance under § 2255. Accordingly, he cannot show that he was prejudiced by counsels' alleged errors.

V.

Based on the foregoing, it is hereby

**ORDERED** as follows:

1. Defendant Ansar McIver's motion to vacate, correct, or set aside sentence pursuant to 28 U.S.C. § 2255 [Record No. 330] is **DENIED**.

2. A Certificate of Appealability shall not issue.

Dated: October 1, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky